RICHARD WOOD AND OTHERS *vs.* THE WILEY CONSTRUC-
TION COMPANY.
THE NATIONAL TUBE WORKS COMPANY *vs.* THE SAME.

Hartford Dist., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, JS.

A joint stock corporation organized under the laws of this state consisted
of three members, all of whom were directors. The three met and
agreed that one of their number should be empowered to act for and
bind the corporation. Held that the corporation was bound by their
act, and the agent duly authorized.

And held not necessary to this result that there should have been any pre-
vious notice of the meeting; nor that there should have been any
written resolution; nor that there should be a record of what was
done.

And the corporation would be bound by their acts, they acting as directors
and in its name, even if they supposed that the business might, notwith-
standing, remain that of a partnership.

The statute (Gen. Statutes, p. 311, sec. 5) provides that before a joint
stock corporation shall commence business, its articles of association
shall be published in a newspaper in the county in which it is located,
and a certificate of the purpose of its organization, the amount of its
capital and the names of its stockholders, signed by the president and
a majority of the directors, shall be deposited with the secretary of the
state; and another statute (Gen. Statutes, p. 439, sec. 23) provides
that a copy of this certificate, certified by the secretary of the state,
shall be *primâ facie* evidence of the due formation, existence and capa-
city of the corporation. Held that such certified copy is *primâ facie*
evidence not merely that the corporation is a legal entity, but that
there is no legal bar to its transaction of business as such.

Where therefore the stockholders of any corporation after the filing of such
a certificate desire to take advantage of any defect in the organization
of the corporation, in a suit against it upon its contracts, the burden of
proof of showing any such defect rests upon them.

[Argued October 7th—decided December 16th, 1887.]

TWO ACTIONS against the defendant, a joint stock corpo-
ration, to recover in the former upon sundry notes executed
by the agent of the corporation and for goods sold to it, and
in the latter for goods sold; brought to the Superior Court
in Hartford County, and tried to the court before *Stoddard*,

*J.* The controverted facts being the same in both cases, the actions were tried together and one finding of facts made for both. Upon the facts found the court rendered judgment in favor of Richard Wood and others for $68,691.82, and costs, and in favor of the National Tube Works Company for $52,041.51, and costs. The defendant appealed in both cases. The facts are fully stated in the opinion.

*C. E. Perkins*, with whom was *P. C. Bryant*, for the appellant.

1. Upon the facts found the defendant company was not legally competent to do any business or make any contracts. The statute relating to joint stock corporations in force in February, 1880, when this company was organized, provided as follows:—" But before it shall commence business its president and directors shall cause said articles of association to be published at full length in a newspaper published in the county in which such corporation is located, and shall also make a certificate, . . . . . which certificate shall be signed by the president and a majority of the directors, and deposited with the secretary of the state." Gen. Stat., p. 311, sec. 5. The court finds that there was no evidence that the articles of association in this case were ever published as thus required. We submit that until this was done this corporation had no power to, and in the eye of the law did not, make the notes or contracts upon which judgment was rendered in these cases. 2 Morawetz on Corp., § 27 ; *Cincinnati Health Assu. Co.* v. *Rosenthal*, 55 Ill., 85 ; *Lycoming Ins. Co.* v. *Wright*, 55 Verm., 526 ; *Hoffman* v. *Banks*, 41 Ind., 1. If a grant of a special power only to exist when a certain thing is done, does not exist until that thing is done, certainly a grant of a general power to do any business, only to exist when certain things are done, is governed by the same rule. *Medill* v. *Collier*, 16 Ohio St., 599; *Hernig* v. *Adams Manf. Co.*, 81 Ky., 300 ; *Hurt* v. *Salisbury*, 55 Misso., 310 ; *Garnett* v. *Richardson*, 35 Ark., 144 ; *Morris & Essex R. R. Co.* v. *Sussex R. R. Co.*, 20 N. Jer. Eq., 542 ; *In re Comstock*, 3 Sawyer, 218; *Oregon &c. Co.* v.

*Rathbun*, 5 id., 32; *Ashbury &c. Co.* v. *Riche*, L. R. 7 H. L. Cas., 653. It may be claimed that there are provisions in charters the violation of which can only be taken advantage of by the state. This is true, but this provision is not one of that kind; nor if it was would it affect the question of power. The question here is one of power to act. If we are wrong in our claim that the corporation had no power to act until the necessary pre-requisites had been complied with, it is of no importance whether the state can take away its charter for such non-compliance. If, on the other hand, we are right in this claim, and the corporation did not have power to make these notes, and they are not their notes, the plaintiffs must fail, not because the defendants' officers did not do what the law commanded and therefore the state has the right to have the charter forfeited, but simply because they hold no notes made by the corporation and never sold anything to the corporation. It may be claimed that the existence of a corporation may be proved by producing its charter and proving acts of user under it; but this rule only applies to corporations organized under special charters, and not to those organized under general laws. *Mokelumne Hill Mining Co.* v. *Woodbury*, 14 Cal., 426; *Narraganset Bank* v. *Atlantic Silk Co.*, 3 Met., 288. Nor is the corporation estopped from showing that it was not competent to make a contract, by the fact that it has received a consideration or benefit from it. Ang. & Ames on Corp., § 256, and cases cited. It may perhaps be liable when it has received property or money under a void contract to refund the money, but no recovery can be had upon the contract as such. A corporation cannot be estopped from showing that a contract was *ultra vires*. *Hood* v. *N. York & N. Haven R. R. Co.*, 22 Conn., 508.

2. We submit that the contracts in question were not in fact made by the Wiley Construction Company, that they were not authorized or ratified by it in any way, and that the defendant is not estopped from setting up this defense. Corporations can act on contract only by agents, and a person claiming to have contracted with them must show author-

ity express or implied; or a ratification by the directors as such, acting for the corporation; or an estoppel. 1st. As to express authority to Wiley. It is not pretended that there was ever any vote of the stockholders or directors that any business whatever should be done by the corporation, nor were these purchases in the usual course of business of the company, nor necessary for its business, nor did it have any business which Wiley or any one else was to do. There is no pretense that either directors or stockholders ever contemplated that the corporation should do any business or make any contracts by or through Wiley or any one else, or that in fact it ever did do any. What Ballou, Wiley and Beatty agreed to, was that in carrying on the business of Ballou and Wiley, Wiley should use the name of the corporation when he saw fit; and that is all they agreed that Wiley should do. 2d. There being no actual authority given to Wiley, was there any implied authority? Morawetz (on Corporations, vol. 2, §§ 585, 586) says: "A principal who employs an agent in a particular transaction or course of business, thereby impliedly invites persons dealing with the agent in that particular transaction or course of business to rely upon the agent's apparent powers. . . . . The liability of an agent in cases of this kind seems properly to rest on an implied agreement." No such facts exist in these cases, as the company did no business, and Wiley had no actual authority as agent. 3d. It cannot be claimed that there was any actual ratification or approval by the corporation of these purchases from the plaintiffs by Wiley. There was no vote of directors or other corporate action which would be an express ratification. The only claim left is therefore that the knowledge of Ballou and his approval binds the company as a ratification by it. But it does not appear from the finding that Ballou knew of the purchases in question here. But supposing that he did know that Wiley was buying these goods for his and Wiley's business in the name of the company, how can that be a ratification which will bind the company, any more than his original agreement with Wiley that he should so use the

company's name. 4th. Upon the facts is this corporation, as such, estopped from saying that Wiley was not authorized by it to make the purchase in question? The definition of estoppel is, that when one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act upon that belief so as to alter his own position injuriously to him, the former is concluded from averring against the latter a different state of things as existing at the time. It is not pretended that either Wood & Co. or the Tube Works ever knew that Wiley had purchased goods in the name of the company from any one else, or had acted in any way as the agent of the company, nor is it found, as it would have to be, that they relied on the knowledge of any such acts in selling goods to him. On the contrary it expressly appears in the finding that they sold the goods relying upon Ballou's statements. The question of estoppel, therefore, is brought down to this: Is a corporation so bound by the statement of one director, not made while performing any duty of the company, that it is estopped from denying it? In this case Ballou does not appear to have been in any way engaged in any business of the company at any of these interviews; he may have been in the street or a railway car or in his office. Even notice to him under these circumstances would not be notice to the corporation. *Farmers' & Citizens' Bank* v. *Payne*, 25 Conn., 446; *Farrell Foundry Co.* v. *Dart*, 26 id., 383. A director, merely as such, is not, by virtue of his office, an agent of the corporation, with power to bind it by his statements or representations. Ang. & Ames on Corp., § 309; 2 Morawetz on Corp., § 540 *a*; *Peek* v. *Detroit Novelty Works*, 29 Mich., 313; *Corbin* v. *Adams*, 6 Cush., 93; *Tripp* v. *Metallic Packing Co.*, 137 Mass., 499.

*A. F. Eggleston* and *E. D. Robbins*, for the appellees.

PARDEE, J. These are two cases against the Wiley Construction Company, upon the same state of facts. They were argued together by agreement, and will be treated as one case.

The defendant corporation was organized early in February, 1880, under the joint stock laws of this state, and located in Hartford. A certificate of organization was filed in the office of the secretary of the state February 9, 1880.

The capital stock was fixed at $500,000 divided into five thousand shares. Solon L. Wiley subscribed for two thousand five hundred shares, George W. Ballou for two thousand four hundred and ninety-nine shares, and George E. Beatty for one share.

Wiley lived at Greenfield, in the state of Massachusetts, Ballou at New York City or Boston, and Beatty at Boston. Wiley was, and for many years had been, a civil engineer and engaged in various engineering enterprises, and particularly in obtaining rights or franchises from cities, towns, villages, etc., in different parts of the United States, to construct systems of water works for supplying such municipalities and the inhabitants thereof with water; and, having obtained such rights or franchises, had been engaged in constructing the water-works, either personally or through a local company organized to construct them.

Ballou was engaged in the banking and brokerage business in New York and Boston, and at or about the time when the defendant corporation was organized, was interested and engaged in promoting and floating various railroad, mining, and other enterprises, and in providing the capital to build and work the same, and in providing for the issue and marketing of the stock and bonds incident to these schemes. Ballou's principal place of business was in New York City, and the greater part of his time and attention was applied to his business at New York, though occasionally he was in Boston. Beatty was employed by Ballou as cashier in his Boston office. Ballou and Wiley had known each other from childhood, and knew of the line of business each was so engaged in.

There was no evidence that the articles of association were advertised, as required by law.

No formal meetings of the stockholders or directors were held after the meetings at which the defendant was organiz-

ed, except possibly a meeting to place Walter Burnham in the place occupied before his death by Mr. Beatty.

The business and affairs of the company were managed by Ballou and Wiley in an informal manner, and as if it was their joint personal affair, they using the name of the defendant for that purpose.

No formal resolution or vote was had empowering any person to act for the defendant in any way; but the authority to act for and bind the defendant was agreed by Ballou, Wiley and Beatty to be exercised by Wiley in the manner that he did in fact act.

The corporation was organized as the result of the agreement of Ballou and Wiley. Beatty had no real interest in it, and subscribed for his single share so as to make the three persons associating required by the statute. Beatty's single share was held for the benefit of Ballou.

The corporators were made directors. Wiley was made president, and Beatty secretary and treasurer.

Nothing has ever been paid in on account of any of the subscriptions to the capital stock.

The condition of affairs and the reasons which induced Ballou and Wiley to organize the corporation were as follows:

From and after 1877 or 1878, and down to the organization of the corporation, water-works had been commenced or constructed in whole or in part in several places: those at Ottumwa and Tiffin were completed so far as the original construction was concerned, and those at Niles, Owego and Towanda were in process of construction. Those completed were receiving repairs and extensions from time to time.

The corporation was suggested and organized for the purpose of doing all that had theretofore been done by Ballou and Wiley in obtaining the right to build, and in constructing and extending water-works and pipe lines, and in keeping the same in repair.

Contracts, rights or franchises to construct were to be obtained by Wiley in the defendant's name, and the construction, extension and repair were thereafter to be done

by the defendant or by Wiley in its name, and the material and supplies used in the construction were to be purchased by Wiley in its name or in his own name as he saw fit.

As president and general manager of the Wiley Construction Company, and with the knowledge and consent of Ballou, Wiley, beginning in the spring of 1880, took, in behalf of the company, new contracts to build works at Gardner in Massachusetts, Las Vegas in New Mexico, Clifton in Arizona, and Appleton in Wisconsin. He also contracted to build, and did build a pipe line for the San Pedro & Cañon Del Agua Mining Company. But as Ballou was the president and promoter, and his house the financial agent of the mining company, it was thought best by Ballou and Wiley that Wiley should take this contract in his individual name. But in fact it was for the benefit of Ballou and Wiley in the same manner and to the same extent as all the others, and purchases were made by Wiley therefor in the name and upon the credit of the Wiley Construction Company. Shipments were made on account of this contract, both to Wiley and to Captain Ruger, an employee engaged in the construction of the pipe lines.

All the affairs, financial or otherwise, of the Wiley Construction Company from and after its organization down to the year 1882, were managed by Wiley, with the advice and direction of Ballou.

Beatty died in July, 1881, and his place as director and officer of the corporation seems not to have·been filled until the fall of 1881, when one Walter Burnham, an attorney-at-law by profession, but then employed by Ballou in some of his many schemes, acted, to some extent, in place of Beatty as an officer of the company.

No books of the defendant seem to have been kept, and no formal record of the doings of its officers or stockholders. No reports, as required by law, were made. But Ballou and Wiley continued to prosecute their schemes after the formation of the corporation substantially as they did before, using the name of the corporation when it suited their purposes, and omitting it when they chose.

The manager at the plaintiffs' works, and the treasurer and financial manager of the plaintiffs, called upon or saw Ballou, and he told each of them that the defendant was responsible, and that Wiley had power to purchase on behalf of the defendant, and the goods were sold and delivered to Wiley upon the credit of the defendant, and the debt in question incurred in reliance upon such statements of Ballou, and upon the representations of Wiley, and the credit of the defendant. The goods were used at Tiffin, Towanda, Las Vegas, Clifton, Ottumwa, Owego and Appleton.

The defendant filed reasons of appeal as follows:

1. That the court erred in not holding that, there being no evidence that the articles of association were published as required by law, the Wiley Construction Company was never authorized to transact business and could not legally transact any.

2. The court erred in holding that, upon the facts found, the contracts of purchase made by Wiley of the plaintiffs in the name of the Wiley Construction Company, were binding upon that corporation.

3. The court erred in holding, upon the facts found, that Wiley had legal authority to make contracts binding upon the Wiley Construction Company.

4. The court erred in holding that the statements of Ballou in relation to the authority of Wiley to make contracts in the name of the Wiley Construction Company, were binding upon the corporation as an estoppel or otherwise.

5. The court erred in holding that, there never having been any legal meeting of the directors after the organization, authority could be legally given to Wiley to make contracts for the corporation by separate agreements of the directors.

6. That it does not appear from the finding of facts that Wiley had any legal authority to make the purchases of the plaintiffs for the Wiley Construction Company for which they have recovered judgment, nor that the same have ever been ratified or affirmed by the corporation, nor that the corporation had ever received any benefit from the same.

7. That it does not appear from the finding, that Wiley had any authority to make any of the contracts for water works in the name of the Wiley Construction Company which are mentioned in the finding, and especially the contracts at Appleton and elsewhere for which the goods of the plaintiffs in this case were furnished.

The finding is that "no formal resolution or vote was had empowering any person to act for the defendant in any way, but the authority to act for and bind the defendant was agreed by Ballou, Wiley and Beatty to be exercised by Wiley in the manner he did in fact act."

In the case of a joint stock corporation organized under the laws of this state, whenever and wherever all of its stockholders are assembled and in fact engaged in considering and determining what the corporation shall do, and by whom it shall act, there is the corporation; what they do, it does; the appointment of an agent to speak or act for it, or represent it in any one matter, or in all matters with unlimited authority, is an appointment by it, and it is bound by his action. It is not necessary to this result that there should have been any previous notice of such meeting, nor that there should be any written resolution, nor that there should be any record of what was done; their consenting speech and act is legally equivalent to all these.

Upon the record every stockholder was a director and was present, was considering what the corporation should do, and joined in appointing Wiley as its agent and in sending him into the world with full authority to do everything which was subsequently done by him and to bind the corporation by every purchase and promise which he has made for it and in its name.

Of course the individuals drew over themselves the corporate shield as protection against the hazards of their projected enterprises to their individual fortunes. Of necessity then they intended that all purchases and promises should be by the corporation, and that Wiley should be appointed and authorized by it to make for it and in its name and behalf these purchases and promises. To do this particular

business was the only reason for the existence of the corporation ; no one of its stockholders had any other purpose in view when organizing it ; but every one of them did intend that it should so far act and make contracts in its corporate capacity, through the instrumentality of Wiley, its agent, as to relieve themselves from all burden of personal responsibility. They all so said to Wiley when all were assembled as a corporation. It is found that when thus assembled they agreed that contracts, rights or franchises to construct were to be obtained by Wiley in the defendant's name, and the work of construction, extension and repair should thereafter be done by it or by Wiley in its name, and the materials and supplies were to be purchased by Wiley in its name or in his own name as he saw fit. This business was within corporate scope. The agent exercised the power conferred and used the corporate name. The acts and contracts by this agent are the acts and contracts of the corporation.

The degree of informality which attended the management of its affairs by all of the shareholders assembled and uniting is of no legal significance ; none, even if they were mistaken as to the legal effect of their use of the corporate name ; none, even if they supposed, as a matter of law, although using the corporate name, that the business might remain that of a partnership. The corporation was organized; its directors and agents acting as such could not transact its business in its name and control the legal result.

Our statute declares that before a joint stock corporation shall commence business the president and directors shall publish at full length its articles of association in a newspaper published in the county in which it is located. Upon the trial there was no evidence as to such publication. The statute, Revision 1875, p. 439, sec. 23, provides that "a copy certified by the secretary of this state under its seal, of the original certificate of organization of any joint stock corporation, shall be *primâ facie* evidence of the due formation, existence and capacity of such corporation." That is, shall be *primâ facie* evidence not merely that the corporation is a legal entity, but that there is no legal bar to the

transaction of business as such.   For such a statute there is good reason.   If the stockholders have omitted to meet any one of the formal statutory prerequisites, and notwithstanding proceed to transact business and hold themselves out to the world as a corporation, buy and use property and promise to pay for it, and if, when sued for breach of contract, they desire to take advantage of a defect in their armor, known to themselves, concealed from creditors, it is proper that the burden of showing the defect should be placed upon themselves.

There is no error in the judgment complained of.

In this opinion the other judges concurred.