[No. 1223.]

## THE ROBINSON REDUCTION CO. v. JOHNSON.

1. CORPORATIONS—AGENTS.
Where the directors of a corporation meet and authorize one of their
    members to take entire charge of the company's business, it was
    not necessary that a record should have been made of the appoint-
    ment.  The authority given by a corporation to its agent may be
    shown by parol, and the authority of the agent was not dependent
    upon the record of the action of the board.
2.  SAME—OSTENSIBLE AGENT.
Where a party had exercised general control and management of the
    business of a corporation with the knowledge and acquiescence of
    its officers it was immaterial whether he had been actually ap-
    pointed as agent for the corporation, so far as his dealings with
    other parties were concerned.  They were justified in assuming
    that he had actual authority and the corporation was liable to
    third parties for the act of such agent within the general scope of
    the business of the corporation.
3.  PRACTICE—PLEADING.
An objection that no reply was filed to defendant's answer, cannot be
    raised for the first time on appeal, when the trial of the case was
    conducted in all respects as if a reply had been filed.
4.  ASSIGNMENTS—CONSIDERATION.
In a suit by the assignee of a claim the consideration for the assign-
    ment is immaterial to the issue.

*Appeal from the County Court of Gilpin County.*

Mr. N. G. TANQUARY, for appellant.

Mr. H. J. HERSEY and Mr. JAMES MORRISON, for ap-
pellee.

THOMSON, P. J., delivered the opinion of the court.

On the 16, day of October, 1894, William Robinson and
John E. Greenawalt were the proprietors of inventions and
processes for the reduction of metalliferous ores, and the
separation of gold and other precious metals from ores.  On

that day they entered into a contract with John W. Stark-weather and William B. Willard, whereby they transferred to the latter an undivided one half interest in the inventions, for certain designated territory, in consideration of $6,000 to be paid by the assignees, and applied under the supervision of the first named parties in the erection of a suitable plant, in the city of Black Hawk, for the treatment of ores by those processes. The contract also provided for the incorporation, under the laws of Colorado, by all of the parties, of a company, to be known as the Robinson Reduction Company, to which the right to the use of the inventions, and the title to the proposed plant, should be transferred and conveyed. The corporation provided for was accordingly formed. Its purposes, as expressed in its certificate of incorporation, were among other things to deal in, reduce, refine and treat, metalliferous ores, and to lease, purchase, or in any other manner lawfully acquire and operate mining and ore-producing properties. The directors, to whom were confided the affairs and business management of the company for the first year of its existence, were John W. Starkweather, William B. Willard, William Robinson, John E. Greenawalt and Thomas W. Gleason. Although the records of the company were not in evidence, it appears that there was a meeting of the board of directors after the incorporation was consummated, at which a president, vice-president, secretary and treasurer were elected. Mr. Starkweather and Mr. Willard furnished the money as they had agreed, and the reduction works were duly constructed. The rights and titles mentioned in the contract were transferred to the company. No stock of the company was issued prior to June 22, 1895, at which time Mr. Robinson and Mr. Greenawalt sold their entire interest in the company to Mr. Starkweather and Mr. Willard.

It was necessary when the works were completed to have ore with which to test their efficiency. After their completion, Mr. Greenawalt, purporting to act as the agent of the company, made some arrangements with the owners of a

mining property known as the McAllister mine, whereby it was to be operated by the company. Under that arrangement, as the company's ostensible agent, he took possession of the property, and employed a number of men to work it. With the ore obtained from it the required tests were made. The company refused to pay the men employed upon the mine, and they severally assigned their claims against the company to the appellee, who brought this suit upon them. The judgment was for the plaintiff, and the defendant appealed.

Errors are assigned to the rulings of the court, admitting and excluding testimony, and giving and refusing instructions. The defendant asked and was denied the following instruction:

" The court instructs the jury that there is not sufficient testimony to establish an agency between the defendant, The Robinson Reduction Company, and John E. Greenawalt, and you will find for the defendant." The error assigned upon the refusal of this instruction raises the most important question in the case. If Greenawalt was not in fact the agent of the company, and if the company is not estopped by its acts or negligence to deny his agency, then it is not bound by the contracts of employment which he made with the assignors of the plaintiff, and the instruction should have been given. The evidence touching the question of agency, is, briefly, as follows:

Mr. Greenawalt who was a director of the company, and Mr. Robinson who was also a director, testified that at the meeting of the board, held after the incorporation, which was the only meeting shown by the evidence to have been ever held, and which was therefore the same meeting at which the officers of the company were elected, Mr. Greenawalt was authorized by the board to take entire charge of the company's business; that he immediately assumed the direction of its affairs in pursuance of the authority given, and continued in the management of its business for about six months, until the sale of his interest; that he made all contracts, pur-

chased all materials, and superintended all work; that payment of all bills against the company was made through him; that he made the contract with the owners of the McAllister mine, and employed the laborers upon it, in the name of the company; that the assignors of the plaintiff were employed by him in its behalf; and that he made regular reports of all his proceedings to Mr. Starkweather, who was the president of the company. It was also in evidence that ore extracted from the McAllister mine, was received and used by the company. A letter from the president to Mr. Greenawalt, dated April 15, 1895, and two letters from Mr. Willard, the treasurer, to Mr. Robinson, dated respectively, December 29, 1894, and January 19, 1895, were introduced in evidence, from which it abundantly appears that those officers had been fully advised of the proceedings of Mr. Greenawalt in relation to the mine, and that they approved of what he had done and was doing. There was evidence for the defendant in conflict with the testimony of Greenawalt and Robinson, but as the jury found for the plaintiff, we must accept their testimony as true. The only inquiry now is, was the evidence for the plaintiff sufficient to require the submission of the question of agency to the jury? We have no hesitation in saying that it was. The acquisition of the right to work the mine, and the making of such contracts as might be necessary in its operation, were within the expressed purposes of the corporation. There was evidence that at a meeting, duly convened, the board of directors conferred upon Greenawalt a general authority to superintend and manage all its business. No record of his appointment was exhibited; nor, so far as this plaintiff or his assignors are concerned, was it necessary that it should be. The authority given by a corporation to an agent may be shown by parol. Neither was any record of the action of the board indispensable to his authority. His appointment by the board was the act of the corporation, whether a memorandum of it was made or not. *Morrill v. Man'f'g Co.*, 32 Hun, 543; *Wood v. Wiley Construction Co.*, 56 Conn. 87.

But even if there was a defect in his appointment, of which the defendant should otherwise avail itself, or if there was, in fact, no appointment at all, as the business which he transacted was within the corporate scope, the general authority which he exercised during his connection with the company, in respect of its business, with the knowledge and acquiescence of its officers, justified the persons dealing with him in assuming that he had actual authority, and rendered the corporation liable for his acts. *Union Mining Company v. National Bank*, 2 Colo. 248; *Railway Co. v. James*, 22 Wis. 187. The court did not err in declining to give the instruction.

An instruction was asked and refused to the effect that there having been no replication to the answer, certain matter which it set forth must be taken as true. The court correctly declined to so instruct; because, first, the trial was entered upon and conducted in all respects as if a replication had been filed; and it was too late to claim for the first time, after the evidence was heard, the benefit of a want of replication; and, second, the matter alleged did not require a replication. It amounted, in so far as it amounted to anything, merely to a denial of the allegations contained in the complaint. It is only necessary to say in regard to the other instructions refused that they were framed with reference to the legal theory upon which the defense was based, and embodied untenable propositions of law. The instructions given, submitted the questions involved fairly, and, so far as we can see, were unobjectionable.

The defendant undertook to inquire into the consideration of the assignments to the plaintiff, and the court refused to admit the evidence. If the defendant owed the debt, payment to the assignee would discharge it, and it is immaterial what, as between the assignors and the assignee, the consideration was, or whether there was any. *Welch v. Mayer*, 4 Colo. App. 440; *Walsh v. Allen*, 6 Colo. App. 303.

It is said also that permitting Mr. Greenawalt to testify to his authority as agent was erroneous. We hardly under-

stand counsel's meaning.   The authority could be shown by
parol, and Mr. Greenawalt was certainly a competent witness.
We find no error in the record, and must affirm the judgment.
*Affirmed.*