NATIONWIDE MOTORIST ASSOCIA-
TION OF MICHIGAN, Inc.,
Plaintiff-Appellee,

v.

Gurn FREEMAN and Jack Freeman,
Defendants-Appellants.

No. 18314.

United States Court of Appeals
Sixth Circuit.

Jan. 8, 1969.

Narcisse A. Brown, Chicago, Ill. (Noble & Brown, Chicago, Ill., on the brief), for appellants.

Jon F. DeWitt, Grand Rapids, Mich. (Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., on the brief), for appellee.

Before PHILLIPS, EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from a judgment of $50,000 entered in favor of plaintiff-appellee and against defendants by a United States District Judge in the Western District of Michigan after trial without a jury.

Plaintiffs were two Michigan corporations (Nationwide Motorist Associa-

tion of Michigan, Inc. and Nationwide Motorist Association of Ohio, Inc.) and four Michigan residents who formed said corporations and served as stockholders and officers of same. Defendants were Nationwide Motorist Association, Inc., a Delaware corporation, and two Illinois residents, Gurn and Jack Freeman, officers and principal stockholders of the corporate defendant. At trial plaintiffs moved to dismiss the four counts seeking separate damages for the individual plaintiffs. The corporate defendant at trial (Nationwide Motorist Association, Inc.) did not perfect an appeal.

The purposes of the national corporate defendant were described (somewhat glowingly as compared to this record) as follows:

"NMA was incorporated in Delaware on February 7, 1957 to engage in and operate the business of a national association of affiliated motor clubs. In the operation of a national association of motor clubs, the membership benefits, which included travel guidance, bail bond coverage, private police protection, travel insurance and emergency towing and road service, are marketed through a system of affiliated clubs, distributors and dealers who are connected with the national organization on a franchise basis."

█ Plaintiffs' complaint alleged fraud and misrepresentation by the Freemans and NMA, Inc., and their agents. In Count I plaintiffs sought to affirm a franchise agreement for the State of Michigan and recover damages for the fraud measured by "the benefit of the bargain" standard. In Count II

they sought to rescind the franchise agreement for the State of Ohio and to recover the price paid therefor.[1]

The District Judge first heard and denied a motion by defendants to dismiss this action on the ground that service of process under Michigan's "long-arm" statute (Comp.Laws 1948, § 600.-705(2) [P.A.1961, Act No. 236] Mich. Stat.Ann. § 27A.705(2) (1962)) was not justified by any activity (or consequences of activity) in Michigan on the part of defendants.[2] His opinion on the jurisdictional issue is reported at Nationwide Motorist Assn. of Mich. v. Nationwide Motorist Assn., Inc., 244 F.Supp. 490 (W.D.Mich.1965). Although, as appellants argue, most of the misrepresentations alleged by plaintiffs and ultimately found by the District Judge were made by the Freemans in Illinois or by an agent of the corporate defendant in Michigan, we believe that they were substantially repeated and ratified by the Freemans in Grand Rapids, Michigan, before plaintiff paid any substantial part of the consideration for the franchise. Since the representations made in Grand Rapids were material, were plainly designed to be relied upon in occasioning plaintiffs' formation of a company to do business in Michigan under franchise from defendant NMA and plaintiff alleged both falsity and reliance, we believe there was sufficient activity within Michigan to uphold service and limited personal jurisdiction under the Michigan statute. This statute has recently been applied and upheld by the Michigan Court of Appeals. Dornbos v. Adkins Transfer Co., Inc., 9 Mich.App. 515, 157 N.W.2d 498, leave to appeal de-

---

1. A judgment in favor of NMA of Ohio for $60,000 ran only against defendant NMA, Inc., and is not at issue in this appeal.

2. The pertinent portion of Michigan's "long-arm" statute reads as follows:

   "The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal juris-

diction over such individual and to enable such courts to render personal judgments against such individual or his representative arising out of the act or acts which create any of the following relationships:

\*   \*   \*   \*   \*

   "(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. \*   \*   \*" Mich.Stat.Ann. § 27A.705 (1962).

nied, 381 Mich. 772 (1968). This court has recently upheld the federal constitutionality of a similar "long-arm" statute and applied it under quite different facts to uphold jurisdiction over a foreign defendant. Southern Machine Co., Inc. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968). See also Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797 (7th Cir. 1967).

At trial of this case the District Judge entered the following findings of fact as to plaintiffs' charges of fraud and misrepresentations:

"We viewed the witnesses during the trial and observed their demeanor and conclude that the testimony of Gurn and Jack Freeman and William Doyle lacks any substantial credibility, and that the following misrepresentations were material and false: that the defendant corporation had over one million members; the defendant corporation experienced membership renewals at the rate of 88%–90%; there were thirteen to seventeen thousand independent insurance agencies in the State of Michigan available as dealers for the sale of memberships in Michigan; Gurn Freeman after starting his business with a substantial debt, had been so successful that he was a millionaire at the time the Michigan and Ohio franchises were sold to plaintiffs; NMA had enjoyed solid financial success in the years preceding the negotiations for the Michigan and Ohio franchises; Nationwide Mutual Insurance Company offered the defendant corporation over one million dollars for the company name; the defendant corporation had grown to be the second largest association of its kind in the world; the membership quota contained in the Michigan and Ohio franchise agreements was meaningless and had not been and would not be enforced, and was placed there only to prevent speculation; the National Office had 70 to 80 new leads for the Michigan corporation to use in contacting independent insurance agencies in the State of Michigan;

George Hargrave, when the defendant corporation was organized, gave Gurn Freeman a check for $500,000 to be used as working capital in the defendant Michigan corporation; the Michigan corporation based on results experienced by other franchise holders could sell 500 dealerships, 50,000 master memberships, and 25,000 associate memberships in its first year of operation and the Michigan corporation based on the results being experienced by other franchise owners, could expect a net worth of $125,000 after one year of operation.

"Defendant Corporation and the individual defendants, Jack and Gurn Freeman, made the above statements and representations with the intent to defraud and deceive plaintiffs, knowing that they were false and knowing plaintiffs would act on them to their detriment.

"Defendants Gurn and Jack Freeman personally participated in making these representations. * * *

\* \* \* \* \* \*

"We find that between January 1963 and April 1963, the value of the Michigan contract was nil. Its value had defendants' representations been true, would have been reasonably worth $50,000."

As we read defendants-appellants' brief, they concede that there is evidence to support these findings to the extent that they deal with defendants' representations and the falsity thereof. But they argue that these findings are irrelevant as proofs of fraudulent representation and plaintiffs' reliance thereon.

We do not agree. The misrepresentations found by the judge appear to us to have been intended to induce plaintiffs to invest the sums which they did invest and the evidence strongly supports the District Judge's finding of fact that plaintiffs relied on them in doing so.

We find no merit to appellants' argument that the corporate plaintiff

could not recover because many of the misrepresentations were made and were relied on by the individuals who formed the corporation prior to incorporation. This was a continuing scheme. The actual course of the incorporation was induced and guided by defendants. Plainly, defendants intended their representations to be received and relied upon by plaintiff corporation. In a leading case the Supreme Court of Connecticut said:

"If, therefore, the defendant fraudulently told the five individuals named in the complaint what is there alleged, in order to induce them to form the plaintiff corporation and procure the execution by it of the contract which was the subject of their negotiation with him; and if thereupon, in reliance on his statements, they did the very things which his representations were designed to promote or secure; the fact that the last step—the execution of the contract—was, in form, the act of a party with which he never had any direct communication, cannot relieve him from responsibility for all the damage naturally resulting from his fraud. So far as concerns the individuals with whom his negotiations were conducted, each of them has his several action for whatever injury he can show. So far as concerns the corporation, it has also its action for whatever injury it can show. It would have been an idle ceremony for these five men, after becoming the sole shareholders and directors of the plaintiff, to recount to themselves, as such, the representations made to them as individuals, a few weeks before, in contemplation of their occupying this very position. Whatever had been thus said to them to influence the action of the projected corporation, was in legal effect known to the corporation as soon as it was formed. For many purposes there is a practical identity of a corporation with its members; and where all of these are also directors and the only directors, the identity, so far as questions of notice are concerned, is almost absolute. Wood v. Wiley Construction Co., 56 Conn. 87, 96, 13 A. 137; Woodbridge v. Pratt and Whitney Co., 69 Conn. 304, 330, 37 A. 688," Scholfield Gear & Pulley Co. v. Scholfield, 71 Conn. 1, 15, 40 A. 1046, 1049 (1898). See Crystal Pier Amusement Co. v. Cannan, 219 Cal. 184, 25 P.2d 839, 91 A.L. R. 1357 (1933). See also Oppenhuizen v. Wennersten, 2 Mich.App. 288, 139 N.W. 2d 765 (1966).

■ Nor are defendants insulated from personal liability for their own fraudulent acts by the fact that the corporate defendant was deeply involved in this fraud. Under Michigan law, as the District Judge pointed out, "they can be held individually liable to the plaintiffs for their own misrepresentations. * * *" Mason v. Vogue Knitting Corp., 361 Mich. 481, 105 N.W.2d 412 (1960). See also Springman Paper Products Co. v. Detroit Ignition Co., 236 Mich. 90, 210 N.W. 222 (1926).

As we have noted, however, the $50,000 judgment in favor of Nationwide Motorists Association of Michigan rests upon the "benefit of the bargain" theory of damages, and appellants dispute both the applicability of the principle of law employed by the District Judge and the amount he awarded in damages.

■ It seems clear to us that Michigan law allows a defrauded party to a contract to reject rescission and to affirm the contract and seek the value which the contract would have had if the representations had been true. Nowicki v. Podgorski, 359 Mich. 18, 101 N.W.2d 371 (1960); Gross v. Morosky, 366 Mich. 114, 113 N.W.2d 863 (1962).

In D'Alessandro v. Vander Hooning, 365 Mich. 66, 73, 112 N.W.2d 114, 118 (1961), the Michigan Supreme Court said:

"By proceeding under the contract after discovery of the actual situation and the falsity of the representations made, they waived their right to rescind. In consequence, we have a suit

to recover damages the measure of which is 'the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true.' 24 Am.Jur., Fraud and Deceit, § 227, p. 55. In accord with the general rule are prior decisions in Michigan relating to the matter. Among the cases recognizing such rule are: Chapman v. Bible, 171 Mich. 663, 137 N.W. 533, 43 L.R.A. N.S. 373; Gloeser v. Moore, 283 Mich. 425, 278 N.W. 72; Paquin v. Van Houtum, 343 Mich. 111, 72 N.W.2d 169."

 This, then, leaves as the only remaining question: whether or not there is evidence to support the $50,000 damage figure.

First, we note that we deal with this issue against a background which included the fact that plaintiff corporation and the individuals who formed it paid $35,000 for the Michigan franchise and expended considerable additional sums on the effort to make the new corporation successful. In contrast to these expenditures, the District Judge determined that the value of the franchise was nil, and we believe the record supports his finding in this regard.

Second, the District Judge seemed to relate his judgment in this count directly to the following testimony concerning a conversation between Mitchell (the leading figure in forming the plaintiff corporation) and defendant Gurn Freeman:

"Q. Did he tell you [Mr. Mitchell] what the price [of the Ohio franchise] was?

"A. Seventy thousand dollars.

"Q. What did you respond to that?

"A. I wanted to know What's the big deal? Seventy thousand dollars. I paid $35,000 for Michigan. He said, Now, wait a minute. If you remember correctly, when you came into the office to buy this franchise DenBesten had an old price list. And the price of Michigan was supposed to have been $50,000. But because DenBesten had already quoted you a figure of $35,000, I had to stick with that. And $70,000 is the price of Ohio. He said, You got a knockdown on the price of Michigan as it stood in the first place. I said, Well, it was not my fault, I didn't know what the price was."

In addition, we find testimony that Gurn Freeman gave representatives of plaintiff corporation written projections purporting to show in elaborate detail that the Michigan corporation would be worth $125,000 at the end of the first year, $272,000 at the end of the second year, and $609,000 after three years.

Taking all of these circumstances into account, we believe the $50,000 damage figure was within the range of evidence in this case. Popielarski v. Jacobson, 336 Mich. 672, 59 N.W.2d 45 (1953).

The judgment of the District Court is affirmed.