CHAPMAN *v.* BIBLE.

DAMAGES—FRAUD—STOCK—SALES.
>    The measure of damages for fraud of the vendor of corporate
>    stock in representing its value to be greater than the true
>    worth is the difference between the value that he represented
>    it had and the actual value. *Steele* v. *Kellogg,* 163 Mich. 132
>    (128 N. W. 403), distinguished.

Error to Ionia; Davis, J. Submitted April 9, 1912.
(Docket No. 79.) Decided October 1, 1912.

Case by Fred A. Chapman against John F. Bible and
others for fraudulent representations. A judgment for
defendant on a directed verdict is reviewed by plaintiff on
writ of error. Reversed.

*Locke & Sheldon* and *George E. Nichols,* for appel-
lant.

*Scully & Davis,* for appellees.

McALVAY, J. Plaintiff brought suit against defend-
ants in an action on the case to recover damages suffered
by him by reason of the fraud, deceit and misrepresenta-
tion of defendants upon which he relied, whereby he was
induced to purchase certain stock in the Ionia Wagon
Company, a going concern, located at Ionia, Mich., en-
gaged in the business of manufacturing and selling wagons
and like products.

Upon the trial of the case, at the close of plaintiff's
proof, on motion of defendants, the court instructed a ver-
dict in their favor, upon which a judgment was entered.
The case has been brought to this court for review upon
writ of error, and a reversal is claimed upon the ground
that the court erred in granting defendants' motion and
taking the case from the jury. The case made by this

plaintiff, under the established rule where there is a directed verdict, will be construed by the court in the light most favorable to him, and it will be considered that the following facts were established on his behalf: In September, 1908, defendant Bible was general manager of the Ionia Wagon Company, in full charge and control of all of its business, with full knowledge of its financial condition. It was capitalized for $100,000 preferred and $150,-000 common stock. Defendant Rumsey owned 6,875 shares and defendant Bible 3,125 shares of the common stock. The latter also held possession of 6,850 shares of this stock belonging to Rumsey indorsed by him in blank, the certificates of which were contained in an envelope upon which was written in Bible's handwriting, "John F. Bible, $68,500 held in trust." Defendant Rumsey also owned 4,050 shares of preferred stock. At this time plaintiff and Messrs. Ashdown, Thwaites, and Green were associated together in business at Ionia in the operation of the Ypsilanti Reed Furniture Company. On September 11, 1908, defendant Bible wrote Mr. Ashdown and his associates the following letter, offering to sell to them 10,000 shares of common stock for $25,000:

"IONIA WAGON COMPANY, MANUFACTURERS OF
          THE BIBLE WAGON.    *   *   *
"Mr. A. J. ASHDOWN—Confidential,
                              "Ionia, Mich.
"*Dear Mr. Ashdown:*
  "This panic has made me feel the importance of having others associated with me in the ownership of this business because in times of unexpected depressions it becomes necessary to borrow some money and as practically all I have is invested in this business I am not strong as a personal endorser when it becomes necessary to borrow some money. We have a prosperous business and last year things looked so rosy that we prepared for a largely increased business this year and in addition spent about $25,000.00 in new buildings, sprinkler and other equipments and instead of an increased business there has been a decreased business. Heretofore our business has been so strongly established that it has not even been necessary

for us to employ traveling salesmen. Our business no year has shown a profit of less than 10 per cent. and some years has run much higher. I would like to have you and Messrs. Thwaites and Green and others of your friends associated with me in the management and ownership of this business and I am willing to make a tremendous sacrifice in order to do it. If you should become interested I think Mr. H. R. Wagar would do likewise although I have not made him any proposition but he has always been very friendly with me and has great faith in the future of my enterprise. I simply want to make my company strong and have strong and aggressive men associated with me. Mr. Rumsey is getting to be quite an old man and does not give the business his personal attention. My books show that my common stock is worth about $166.00 for every $100.00 and on the most conservative estimate that could be placed it is certainly worth par in any way it could be figured but I realize that it could not be sold at par without I had others like yourself and Messrs. Green and Thwaites associated with me and in order to secure your interest I am willing to sell you controlling interest and take my chances with you and I am therefore willing to sell you $100,000.00 worth of my common stock for $25,000.00 or at 25 per cent. of its face value or at less than 15 per cent. of its actual value and on terms and conditions mentioned in my proposition enclosed. Our plant has been recently appraised by the Lemly Appraisal Co. and while I have not seen the figures I understand that the value of our plant and machinery is almost double what we carry it on our books. I put this in writing because I have implicit confidence in you and know you will not abuse it even if not interested. I have not made a like proposition to anyone else. We can consolidate with Lansing interests and get stock for our net assets as shown by the inventory and appraisal but this would take me from Ionia and give me a large and I am afraid unwieldy institution and I prefer to remain an independent institution, and an Ionia institution and to become strong with strictly local interests. The business has now all the rough edges knocked off and I am convinced can be made to pay 20 per cent. annually on the stock issue. If you think favorably of my proposition I will call and talk it over confidentially with you.

"Your friend,
"JOHN F. BIBLE."

With the letter was inclosed a statement made by Bible, showing the condition of the Ionia Wagon Company December 31, 1907, according to which the net assets of the company were represented to be $347,500, and the surplus over stock and all other liabilities $109,000. On the same date defendant Bible submitted to plaintiff and his associates in writing the specific terms of the proposed sale to them, and a few days later, according to another inducement and promise offered to the proposed purchasers, caused a sufficient number of shares of stock (2,600) to be given to them for voting purposes to insure control of the business.

The evidence tends to show that the statement inclosed with the letter of September 11th was false, and that there was in fact a deficit. It also appears from the annual reports for 1905–07 that there was no surplus; that the value of the assets, as represented to plaintiff and his associates, had been largely exaggerated; that the indebtedness was $80,000. The evidence also shows that the purchase upon these representations made by defendant Bible was later consummated by plaintiff and his associates. Plaintiff received one-quarter of the shares of stock purchased. The entire amount of the purchase price was $25,000, $5,000 of which was paid in cash and four notes of $5,000 each were given for the balance. An offer by complainant on the trial to show that Fred W. Green had been appointed receiver of the company, under which an appraisal of the property of the Ionia Wagon Company had been made, which had already been introduced, was objected to by defendants and excluded by the court. The motion for a directed verdict by defendant was then made, counsel for plaintiff admitting, for the purpose of raising the question of the measure of damages, that the stock was actually worth a little more than was paid for it. The court sustained the motion, holding that the proper measure of damages to be applied in the case was, as contended by defendant, the actual loss suffered, and that

there could be no recovery for the so-called benefits of the bargain.

It is conceded in the briefs of counsel for both parties in this case that the only question to be considered is whether the court was in error by this ruling upon the question of the measure of damages.    From the case made by plaintiff, considered by us as established upon this hearing, it appears that this purchase by plaintiff and his associates of this interest in the Ionia Wagon Company was made by them upon certain representations in the letter of September 11, 1908.    This letter contained material representations of fact upon which reliance was placed, and upon which the parties acted.    It also appears that such material statements and representations were false.    It having been admitted by counsel for plaintiff in open court that the stock was of an actual value somewhat more than the price paid by plaintiff, the court held that he had suffered no damages, and could not recover.    Upon this proposition we are satisfied that the court was in error.    The weight of the authorities is to the contrary.    Upon this proposition, we quote from an accepted authority, as follows:

"With respect of the measure of damages which the defrauded buyer may recover, two rules seem to prevail. One, that the buyer may recover the difference between the actual value of the article as delivered and the contract price; the other, that he is entitled to the difference between the value of the article if it had been as represented and its actual value as delivered.

"'It is obvious,' said the court in a recent case (*Fargo Gaslt. Co.* v. *Fargo Gas & Elec. Co.* [4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593), 'that these two rules cannot be reconciled.    One gives to the party deceived the full benefit of the bargain.    The other does not. We are clear that the best reason is with the doctrine that, where one is deceived and defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true, and the value of what he actually received. This represents his actual loss by reason of the fraud of the seller, on the theory that he does not rescind the contract.    Of course, if he sees fit to rescind for fraud, he can only recover back what he has paid.    But if he desires to stand by the agreement, as he has a

perfect right to do, he can logically say to the wrongdoer, "If you had told me the truth, the property would have been worth so much. It is not worth so much because it is not as you represented it. I demand that you make good the difference in money."'

"The weight of authority seems clearly with the latter view." 2 Mechem on Sales, § 1843, p. 1469.

This doctrine has been repeatedly announced and affirmed by this court. The following decisions are referred to: *Page* v. *Wells*, 37 Mich. 415; *Jackson* v. *Armstrong*, 50 Mich. 65 (14 N. W. 702); *Smith* v. *Werkheiser*, 152 Mich. 177 (115 N. W. 964, 15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406). For a collation of the decisions of the several States which announce this doctrine, reference is had to 20 Cyc. pp. 132, 134.

Counsel for defendant is under a misapprehension as to the questions involved in *Steele* v. *Kellogg*, 163 Mich. 132 (128 N. W. 403), when he intimates that this court has there overruled its former decisions and announced the doctrine held by the trial court. In that recent case defendant appealed from a judgment against him, and in the paragraph which discusses the charge of the court upon the measure of damages his counsel relies on the Michigan authorities above cited, and in his brief states:

"The court charged the jury, following the great weight of authority, that the measure of damages was the difference between the actual value of the stock when plaintiff bought it and what the stock would have been worth at that time if the representations had been true."

The fault found with the charge of the court was that under it plaintiff was allowed to recover for bonus stock as well as stock actually paid for. The question involved in the instant case was not passed upon in that case. This case is squarely within the rule laid down in the decisions of this court above cited.

The judgment of the circuit court is reversed, and a new trial ordered.

Moore, C. J., and Steere, Brooke, Stone, and Ostrander, JJ., concurred. Bird, J., did not sit.