OPPENHUIZEN *v.* WENNERSTEN.

1. FRAUD—PRIVITY OF CONTRACT.
   One who, by fraudulent representation, induces another to act to his damage is liable for the damages suffered, and it is not essential that there should have been privity of contract.

2. SAME—REPRESENTATIONS TO INTERMEDIARY.
   False representations need not be made directly to plaintiff claiming to have relied upon them, where made by a defendant to another party with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving the third party and such third party becomes the plaintiff.

3. SAME—INTENT.
   False representations must have been intended to influence the complaining party directly or indirectly, in order that recovery may be based thereon.

4. SAME—INTENT—PARTIES.
   The fact that representations were intended to deceive the person to whom they were made as well as a third person will not affect the right of the latter.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur, Fraud and Deceit § 187.
[2, 5] 23 Am Jur, Fraud and Deceit § 118.
[3] 23 Am Jur, Fraud and Deceit § 116.
[4] 23 Am Jur, Fraud and Deceit §§ 116, 117.
[6] 24 Am Jur, Fraud and Deceit § 278; 5 Am Jur 2d, Appeal and Error § 882.
[7, 8] 24 Am Jur, Fraud and Deceit § 222; 22 Am Jur 2d, Damages § 249.
[9] 24 Am Jur, Fraud and Deceit § 222; 22 Am Jur 2d, Damages § 250.
[10] 24 Am Jur, Fraud and Deceit § 222; 22 Am Jur 2d, Damages §§ 254, 263, 264.
[11] 22 Am Jur 2d, Damages §§ 263, 264.
[12] 22 Am Jur 2d, Damages §§ 162, 165.
[13] 22 Am Jur 2d, Damages §§ 263, 264; 24 Am Jur, Fraud and Deceit § 222.

5. Automobiles—Sale of Stolen Car—Forged Title—Intent to Defraud—Parties.

Sale of stolen car by junkyard dealer to repairer, together with forged title thereto, who used it and parts of another car and resold the stolen vehicle to plaintiff was properly held to have intended that repairer represent to a prospective purchaser that the title was valid, and thereby supply the connection necessary to hold the dealer responsible to the ultimate purchaser.

6. Appeal and Error—Fraud—Great Weight of Evidence—Witnesses.

Claim of appellant in action for fraud that judgment against him was against the great and overwhelming weight of the evidence *held*, not sustained in view of the conflict in the facts and that, in weighing the evidence, the trial judge had the advantage of hearing and observing the witnesses.

7. Damages—Exemplary Damages—Intent.

Exemplary damages are recoverable in actions based upon tortious acts which involve intentional or wanton and reckless disregard of plaintiff's rights.

8. Same—Purpose of Exemplary Damages—Punishment—Compensation.

Exemplary damages are recoverable, where the act or trespass complained of arises from wilful and malicious conduct, such damages not being awarded as a punishment to the wrongdoer but to compensate the injured party.

9. Fraud—Forged Title of Car—Exemplary Damages.

Act of junkyard dealer as representing as valid a forged title of an automobile and making the sale, understanding that resale would take place in the near future, must have been done with design and from wilful motives that infer malice, entitling the person to whom resale was made to collect exemplary damages resulting from the wilful wrong.

10. Same—Exemplary Damages—Embarrassment.

Embarrassment in being questioned about the purchase of a stolen vehicle and the necessity for incurring liability for the costs of collecting damages justified award of $500 exemplary damages.

11. Damages—Exemplary Damages—Compensation.

Exemplary damages must not be so oppressive as to shock the sense of fair minded men nor beyond an amount fairly compensating a party entitled thereto.

12. Torts—Damages—Compensation.

A person who through the tort of another has been required to act in the protection of his interest by bringing an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees, and other expenses incurred.

13. Fraud—Exemplary Damages—Embarrassment—Injury to Reputation.

Embarrassment from innocent involvement by automobile repairer with the purchase and sale of a stolen automobile, damage to reputation, questioning by the authorities, and being required to defend his rights in action by person to whom he had resold the car, justified an award to repairer of $250 exemplary damages.

Appeal from Ottawa; Smith (Raymond L.) J. Submitted Division 3 November 3, 1965, at Grand Rapids. (Docket No. 406.) Decided February 9, 1966.

Complaint by Harry Oppenhuizen against Carl Wennersten and Howard M. Veneklasen for damages arising from the sale of a stolen automobile. Cross complaint by Carl Wennersten against Howard M. Veneklasen for damages arising from the sale of the same stolen automobile. Judgment for plaintiff against both defendants. Judgment for cross-plaintiff against defendant Veneklasen. Defendant Veneklasen appeals. Affirmed.

*Ten Cate, Townsend & Cunningham (Gordon H. Cunningham*, of counsel), for plaintiff.

*George A. Lievense*, for defendant Wennersten.

*Shivel, Phelps, Linsey & Strain (Leland D. Phelps*, of counsel), for defendant Veneklasen.

HOLBROOK, P. J. Harry Oppenhuizen, plaintiff-appellee, brought an action against Carl Wenner-

sten, defendant-appellee, and Howard M. Veneklasen, defendant-appellant. Trial before the circuit judge without a jury resulted in a judgment in favor of the plaintiff against defendant Wennersten for actual damages because of failure of consideration and against Veneklasen based on fraud for $1,768 actual damages and $500 exemplary damages. Judgment for exemplary damages of $250 was also awarded in favor of defendant-appellee Wennersten upon his cross complaint based on fraud against defendant Veneklasen.

Defendant-appellant made a motion for new trial and upon its denial, appealed to this Court.

The transactions concerning 2 so-called "Monza" automobiles make up the background for the action.

The first "Monza" was blue in color and purchased by defendant Veneklasen June 18, 1963, from Weller Auto Parts of Grand Rapids and described in the purchase receipt as a "1963 Corvair, 4-door, #8258." This car, after being taken to defendant-appellant's junk yard, was dismantled and considered nonrepairable by one of Veneklasen's employees and placed in the yard on top of another Chevrolet vehicle. The second was a "red, 2-door 1963 Monza" stolen from Chicago, Illinois, May 7, 1963.

Defendant Wennersten was in the salvage business and the business of buying repairable automobiles for resale.

Wennersten purchased from defendant Veneklasen a 1963 Chevrolet 2-door automobile on June 27, 1963, for $1,300, and after making necessary repairs, resold it to plaintiff Oppenhuizen July 9, 1963, for $1,700. Shortly thereafter, the Federal Bureau of Investigation identified the car as the stolen "red, 2-door Monza" and repossessed it for the true owner.

Defendant Veneklasen testified that he did not sell any red Monza to Wennersten; however, the state-

ment of the motor vehicle sale of June 27, 1963, described a "1963 Chevrolet, 2-door vehicle, #30927-W195053," which appeared also on the title Veneklasen gave to Wennersten, and in turn on the title Wennersten gave to plaintiff Oppenhuizen.

The number tab on the "red Monza vehicle" was for the blue Corvair purchased by Veneklasen from Weller Auto Parts. It had been removed from that vehicle and glued onto the 2-door red Monza. Plaintiff Oppenhuizen and defendant Wennersten charged defendant Veneklasen with forging the title to the "red, 2-door Monza" knowing the same had been stolen and by representing the false title as valid invited not only Wennersten to rely thereon, but also any purchaser from Wennersten.

It was further claimed that Veneklasen knew that, but for the probability of a resale, Wennersten would not have purchased the "red, 2-door Monza." Veneklasen was convicted in Federal court in 1964 on a charge in connection with being a member of a car theft ring.

The learned trial judge made these pertinent findings of fact: That plaintiff purchased from Wennersten in July of 1963, a "red Monza automobile" and received a purported title for the same. Wennersten had previously purchased this red Monza from defendant Veneklasen. The red Monza was a stolen automobile, that Veneklasen knew it, but sold it to Wennersten without revealing this fact.

The blue Monza purchased by Veneklasen from Weller Auto Parts was not repairable. The identification tab on the blue Monza put on by the manufacturer was found on the "red Monza" by the authorities.

Veneklasen set the whole sequence of events in operation knowing that Wennersten was in the business of repairing and selling cars having dealt

with him on that basis for nine months. It was fore-seeable that someone beyond Wennersten would be hurt if the true facts were discovered concerning the "red Monza." The true facts were discovered and plaintiff suffered damages to the extent of the purchase price of the car together with the embarrassment that he endured by the fact that he was in a deal, although innocently, with a convicted member of a car theft ring, and resulting liability for costs of collecting his damages. Wennersten had no knowledge that the "red Monza" was a stolen car and that Veneklasen had no legal title to it. Wennersten was likewise damaged by Veneklasen's fraud.

Defendant-appellant raises several issues on this appeal: (1) that judgment should not have been rendered in favor of plaintiff-appellee against him because there was no privity of contract between them; (2) that the decision for plaintiff Oppenhuizen and defendant Wennersten against defendant Veneklasen was against the great and overwhelming weight of the evidence; (3) the court erred in awarding exemplary damages to plaintiff-appellee; and (4) the court erred in awarding exemplary damages to Wennersten.

Appellant in support of his position that there must be privity of contract between the parties in an action based on fraud in order for recovery, cites 12 Michigan Law and Practice, Fraud, § 10, pp 408, 410:

"In order to authorize an action for fraud, the plaintiff must be the one who has suffered injury from the fraud, and the defendant must have induced the plaintiff's act.     *     *     *

"A person cannot be held liable for a fraudulent misrepresentation unless he made it himself or authorized another to make it for him or in some way participated therein."

In the same authority under the same title and section on p 409 appears the following:

"One who, by fraudulent representation, induces another to act to his damage is liable for the damages suffered, and *it is not essential that there should have been privity of contract or other personal dealings.* A declaration from which it appears that the fraudulent representations of defendant were made for the purpose of inducing plaintiff to make a contract, and did induce him, indicate a sufficient connection on defendant's part with plaintiff's loss to make him liable, though he took no part in making the contract."

The general rule on the subject appears in 23 Am Jur, Fraud and Deceit, § 118, pp 903, 904, which reads in part:

"While some connection, direct or indirect, between a party charged with making false representations and a party relying thereon must be shown, it is not essential, in support of a cause of action for damages resulting from false representations, that the false representations be shown to have been *made directly to the party claiming to have relied upon them.* It has been repeatedly held that where a party makes false representations to another with the *intent or knowledge* that they be *exhibited or repeated* to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements for the damages resulting from the fraud. Such holdings conform to the principle that the rule that representations must have been intended to influence the complaining party is equally applicable whether they are made to him directly or indirectly. Stating the proposition in concrete form, in order to recover for representations made to a third person, it must have been intended that they be communicated to and acted upon by the complaining party, since

otherwise he has no right to rely on them and does so at his own risk. Similarly, if representations are made to one person with the intention that a third person alone shall act upon them, the person to whom they are made cannot maintain an action for deceit against the person making them, although he acts upon them and suffers damage; but the fact that representations were intended to deceive the person to whom they were made as well as a third person will not affect the rights of the latter." (Emphasis supplied.)

From the finding of facts by the learned trial judge, defendant Veneklasen knew that the forged title would be used by Wennersten in making a resale of the "stolen Monza" and that his sale was based mainly upon such an event happening. With such knowledge, could it have been possible that Veneklasen did not intend for Wennersten to represent to a prospective purchaser, in fact to the plaintiff herein, that the title was valid? We think not.

Such a conclusion validates the connection or relationship between the parties necessary to hold defendant responsible to plaintiff for his damages suffered by reason of the fraud. See 37 CJS, Fraud, § 61, p 346; American Law Institute, 3 Restatement of Torts, § 533.

The claim of appellant Veneklasen that the judgment for plaintiff Oppenhuizen and defendant Wennersten against him, was against the great and overwhelming weight of the evidence, appears to be based mainly upon the representation or hope that his testimony would be accepted as true. Appellant challenges the credibility of Wennersten's testimony and relates testimony of Thomas Reimink, Jr., owner of a service garage, concerning a conversation about the "red Monza" at the time it was brought in for repairs, wherein Wennersten is claimed to have said that he made one out of two cars. This

conversation was clarified when Wennersten returned to obtain the automobile after it had been repaired and Reimink questioned Wennersten concerning the previous condition of the car and Wennersten replied "it was wrecked on the right front only," and then Reimink testified that he said, "then we could see where it had been repaired, the hood and fender."

Other parts of the testimony are cited by defendant Veneklasen in an effort to cast doubt upon the testimony of Wennersten. However, the trial judge chose to believe Wennersten in his explanation of what had occurred. The facts were in conflict and in weighing the evidence, the trial judge had the advantage of observing and hearing the witnesses. One inescapable conclusion; *i.e.,* that the *title* for the "blue Monza" bought by defendant Veneklasen from the Weller Auto Parts and junked by defendant, was utilized by Veneklasen in making the sale of the stolen "red Monza" to defendant Wennersten and by Wennersten in turn to plaintiff Oppenhuizen, prevents any serious consideration of defendant's contention that the judgment is against the great and overwhelming weight of evidence.

Defendant Veneklasen asserts that there was no basis for the awarding of $500 exemplary damages in favor of plaintiff-appellee.

To determine whether exemplary damages are appropriate in a case such as the one at hand, we turn to 15 Am Jur, Damages, § 274, p 710, wherein it is stated:

"As a general rule, exemplary damages are recoverable in all actions for damages based upon tortious acts, which involve ingredients of malice, fraud or insult, or wanton and reckless disregard of the plaintiff's rights."

And, in the same authority, section 280, p 718, it is stated:

"Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act; it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations."

In harmony with the stated rule, our Supreme Court has spoken on the subject in the case of *Ten Hopen* v. *Walker* (1893), 96 Mich 236, wherein Mr. Justice LONG states on p 240 as follows:

"Usually, where an act is done with design, and from wilful and malicious motives, the law compels full compensation, and full compensation may not be awarded by the payment of the actual value. Damages in excess of the real injury are never appropriate where the injury has proceeded from misfortune, rather than from any blameable act; but, where the act or trespass complained of arises from wilful and malicious conduct, exemplary damages are recoverable. These damages are not awarded as a punishment to the wrongdoer, but to compensate the injured party. *Wetherbee* v. *Green*, 22 Mich 311 (7 Am Rep 653).

"All redress in damages partakes to some extent of a punitory character, and the line between 'actual' and what are called 'exemplary' damages cannot be drawn with much nicety. They are properly based upon all the circumstances of the aggravation attending it. The real purpose is to compensate the plaintiff for the injuries he has suffered. *Stilson* v. *Gibbs*, 53 Mich 280; *Wilson* v. *Bowen*, 64 Mich 133. It was said by Chief Justice COOLEY, in *Stilson* v. *Gibbs, supra*:

" 'In other cases there may be a partial estimate of damages by a money standard, but the invasion of the plaintiff's rights has been accompanied by circumstances of peculiar aggravation, which are calculated to vex and annoy the plaintiff, and cause

him to suffer much beyond what he would suffer from the pecuniary loss. Here it is manifestly proper that the jury should estimate the damages with the aggravating circumstances in mind, and that they should endeavor fairly to compensate the plaintiff for the wrong he has suffered. But in all cases it is to be distinctly borne in mind that compensation to the plaintiff is the purpose in view, and any instruction which is calculated to lead them to suppose that, besides compensating the plaintiff, they may punish the defendant, is erroneous."

The act of the defendant in representing as valid a forged title to an automobile in making its sale, understanding that a resale of the same would take place in the near future, must have been done with design and from wilful motives that infer malice. This qualifies plaintiff to collect exemplary damages resulting from the wilful wrong committed.

Plaintiff-appellee testified that he had been subjected to much embarrassment in being questioned about the purchase of the stolen vehicle and the trial judge in his finding of facts properly stated, that it was necessary for plaintiff to incur liability for the costs of collecting damages. The question arises, *were there elements of damage to justify the award of $500 exemplary damages?*

The rule in Michigan for the measure of exemplary damages appears in the case of *Stuyvesant* v. *Wilcox* (1892), 92 Mich 233, on p 242, stated by Mr. Justice LONG as follows:

"No rule can be laid down properly measuring or limiting the damages allowable in cases where exemplary damages may be recovered, except, as has been said, 'they must not be oppressive, or such as shock the sense of fairminded men;' but the jury must understand in all cases that they are not justified in going beyond an amount that shall fairly compensate the party entitled to them."

In 72 ALR 2d 943, 947, there appears under the title of "Measure of damages recoverable for fraud as to the credit or financial condition of a third person," the following:

"In actions for falsely representing the financial condition or credit status of a third person, certain specific items or elements of damage have been allowed under the particular circumstances of the cases.

"For example, in *Seaboard Surety Co.* v. *Permacrete Constr. Corp.* (CA 3, 1955), 221 F2d 366, an action by a surety company against a third person for fraudulently inducing the plaintiff to write a surety bond for a contractor that defaulted, the court held that it was not error for the trial court to allow the jury to consider the surety company's counsel fees in the suit against it on the performance bond as an item of damage, citing as a court-approved authority section 914, Restatement, Torts, reading as follows: 'A person who through the tort of another has been required to act in the protection of his interest by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred.'"

We find under the facts of this case, the $500 exemplary damages awarded to plaintiff were reasonable and justified and cannot under any circumstances be deemed oppressive or such as to shock the minds of fairminded men.

. In dealing with the last issue raised by defendant-appellant, *viz.,* the trial court erred in awarding exemplary damages to Wennersten, we believe that Wennersten by being connected with purchasing and selling a stolen automobile, even though he was innocently involved, suffered embarrassment and damage to his reputation. He was also questioned

concerning his relationship with the stolen vehicle by the authorities and required to defend his rights in a suit at law. We apply the same reasoning and rules of law, stated herein applicable to plaintiff, to the exemplary damages of $250 awarded Wennersten, and find that the same were reasonable and justified.

We find no basis in law or in fact to disturb the trial judge's findings. The order denying a new trial is affirmed, costs to Oppenhuizen, plaintiff-appellee, and Wennersten, defendant-appellee.

BURNS and J. H. GILLIS, JJ., concurred.