*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LISA JORDAN,

        Plaintiff-Appellee,

v

VICTORIA RYNBRANDT, also known as
VICTORIA RYANBRANDT, Individually and as
Trustee of the VICTORIA RYNBRANDT LIVING
TRUST,

        Defendant-Appellant.

UNPUBLISHED
March 11, 2021

Nos. 350289; 350781
Barry Circuit Court
LC No. 2016-000006-CK

Before: REDFORD, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In 2015, plaintiff, Lisa Jordan, purchased a residential property from defendant, Victoria Rynbrandt. Jordan later filed the current lawsuit, alleging fraud and breach contract on the basis that Rynbrandt misrepresented the condition of the property before the sale. Following a bench trial, the trial court concluded that Rynbrandt committed fraud and breached the parties' contract by denying knowledge of any flooding problems when she completed the seller's disclosure statement. As a result, the trial court entered judgment in Jordan's favor in the amount of $41,500. Relying on MCR 2.625, the trial court also awarded Jordan $87,362.82 in attorney fees and costs. Rynbrandt appeals to this Court as of right.[1] For the reasons explained in this opinion, we affirm

---

[1] Rynbrandt filed two appeals of right. In Docket No. 350289, she appeals the July 30, 2019 judgment in Jordan's favor, and in Docket No. 350781, she appeals the September 5, 2019 order awarding attorney fees and costs. The appeals were consolidated by this Court. *Jordan v Rynbrandt*, unpublished order of the Court of Appeals, entered October 9, 2019 (Docket Nos. 350289 and 350781). Jordan disputes this Court's jurisdiction in Docket No. 350289 on the basis that the July 30, 2019 order was not a final order appealable as of right and that there was no final order until September 5, 2019 or September 19, 2019. We previously denied Jordan's jurisdictional challenge, on the merits, when we denied her motion to dismiss Rynbrandt's appeal.

-1-

the trial court's orders in part, vacate the orders in part, and remand for entry of a reduced judgment in Jordan's favor (in the amount of $31,500) and an award of costs only under MCR 2.625.

## I. FRAUD

Rynbrandt first contests the trial court's judgment in Jordan's favor on her claim of fraudulent misrepresentation, asserting that the trial court clearly erred by concluding (1) that Rynbrandt made a misrepresentation and (2) that Jordan acted in reliance on any misrepresentation. According to Rynbrandt, the trial court's findings of misrepresentation and reliance were clearly erroneous because (1) Rynbrandt disclosed, and Jordan knew of, a nearby "swamp," (2) Jordan agreed to waive inspection and to accept the property "as is," and (3) Jordan signed the purchase agreement before she received Rynbrandt's disclosure statement, thereby negating any claim of reliance. These arguments lack merit.

Following a bench trial, we review de novo a trial court's conclusions of law, and the trial court's factual findings are reviewed for clear error. *Menhennick Family Trust by Menhennick v Menhennick*, 326 Mich App 504, 509; 927 NW2d 741 (2018). "A finding is clearly erroneous if there is no evidentiary support for the finding or, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. "This Court gives due regard to the special opportunity of the [trial] court to judge the credibility of the witnesses who appeared before it[.]" *Id*. (quotation marks and citation omitted; first alteration in original).

To prove fraudulent misrepresentation or actionable fraud, a plaintiff must prove that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the

---

See *Jordan v Rynbrandt*, unpublished order of the Court of Appeals, entered July 6, 2020 (Docket No. 350289). That decision is now the law of the case. See *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 144-145; 946 NW2d 812 (2019).

In any event, Jordan's jurisdictional argument lacks merit. As we explained when denying Jordan's motion to dismiss, the July 30, 2019 order—establishing liability and awarding damages to Jordan—was a final order under MCR 7.202(6)(a)(*i*). The September 5, 2019 postjudgment order awarding attorney fees was likewise a final order under MCR 7.202(6)(a)(*iv*). There can be more than one final order, *Maryland Cas Co v Allen*, 221 Mich App 26, 29; 561 NW2d 103 (1997), and both final orders in this case are appealable as of right under MCR 7.203(A)(1). The entry of a third order on September 19, 2019, which did nothing more than declare the September 5, 2019 order to be a final order, does not change this result. "[T]he right to appeal is determined not by the form of the order or decree, but by its effect." *Kuizema v Breen*, 316 Mich 492, 495; 25 NW2d 596 (1947) (quotation marks and citation omitted). Considering the effects of the orders in this case, the July 30, 2019 and September 5, 2019 orders were both final orders, timely appealed by Rynbrandt as of right. Jordan's jurisdictional arguments lack merit.

-2-

plaintiff suffered damage. [*Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004) (quotation marks and citations omitted).]

Jordan's particular claims of fraud related to Rynbrandt's statements in the seller's disclosure statement, which also implicate the Michigan Seller Disclosure Act (SDA), MCL 565.951 *et seq*. Reviewing liability for fraud within the context of the SDA, this Court has explained:

> [I]t is evident that the Legislature intended to allow for seller liability in a civil action alleging fraud or violation of the act brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement, but with some limitations. Liability is precluded for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered, where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care, of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the disclosure statement to the buyer. [*Bergen*, 264 Mich App at 385.]

In this case, consistent with the requirements of the SDA, see MCL 565.957, the seller's disclosure form completed by Rynbrandt specifically asked whether she was aware of any "[s]ettling, flooding, drainage, structural or grading problems," and the form gave Rynbrandt the option of choosing "yes," "no," or "unknown." Rynbrandt checked "no." In actuality, there was substantial evidence that, when it rained, the lawn and driveway of the property flooded with several inches of water. The evidence also indicated that Rynbrandt knew of the flooding problem as evinced by her own trial testimony and other evidence related to her previous contacts with the township about possible solutions to address the flooding. Reviewing this evidence, the trial court concluded that Rynbrandt knew of the flooding and made a material misrepresentation by denying the existence of flooding problems when she completed the seller's disclosure statement. Relying on Jordan's testimony, the trial court also concluded that Jordan relied on Rynbrandt's misrepresentations and that Jordan suffered damages as a result.

In contrast to the trial court's conclusions, Rynbrandt contends on appeal that, although the seller's disclosure statement was inaccurate, Rynbrandt essentially corrected the error with an addendum to the purchase agreement that included a survey showing the existence of a "swamp." Because Jordan received this information and Jordan admitted that she saw swampland on a neighbor's property, Rynbrandt also argues that Jordan cannot have reasonably relied on the seller's disclosure statement.

Rynbrandt is correct that there was evidence at trial about disclosure of a swamp. The evidence at trial—including testimony from Rynbrandt, Jordan, and others—was that there was a swamp or wetland area on a neighbor's property, and the presence of a swamp was also noted on a survey provided by Rynbrandt to Jordan in connection with an addendum to the purchase agreement. According to Rynbrandt, after her neighbor constructed a building on these wetlands, her own property began to flood when it rained and water overflowed from the neighbor's swamp. However, despite her knowledge of this problem, at no time did Rynbrandt inform Jordan that her property was prone to flooding. To the contrary, as noted, Rynbrandt expressly denied any problem with flooding when she completed the seller's disclosure statement. Notwithstanding her express denials, Rynbrandt contends that she somehow informed Jordan of the flooding problem

by alerting her to the presence of a swamp. But this argument misconstrues the nature of the problem at issue. That is, the condition to be disclosed was not that of a nearby swamp or wetlands on a neighbor's property. The issue to be disclosed was the fact that, when it rains, water moves beyond the swamp area to flood Rynbrandt's lawn and driveway. Rynbrandt denied flooding on her own property, and the mere disclosure of the existence of a swamp—without information that the swamp was prone to "overflow" onto Rynbrandt's property—did not correct such denials.

Likewise, Jordan's knowledge of the nearby swamp does not necessarily obviate her reliance on Rynbrandt's denials of a flooding problem on her property. Although Jordan admitted to seeing swampland on neighboring property, Rynbrandt's express denials of a flooding problem on her own property gave Jordan ample reason to believe that the wetlands would *not* have any adverse impact on her property. Ultimately, the trial court did not clearly err by concluding that Jordan relied on Rynbrandt's denials of flooding or drainage problems, notwithstanding Jordan's knowledge of a swamp on a neighboring property. Cf. *Bergen*, 264 Mich App at 389 ("Plaintiffs . . . could have actually relied on the disclosure statement for the proposition that the sunroom roof did not leak, and could have done so reasonably, even in the face of the inspection report and language in the disclosure statement itself.").

Additionally, Rynbrandt contends that Jordan cannot claim fraud when Jordan could have inspected the property to discover the flooding but rather than inspect the property, in an additional addendum to the purchase agreement, Jordan agreed to waive inspections and accept the property "as is." Contrary to this argument, the trial court did not clearly err by finding fraud despite the "as is" addendum. As explained by this Court:

> "As is" clauses allocate the risk of loss arising from conditions unknown to the parties. . . . "As is" clauses also transfer the risk of loss where the defect should have reasonably been discovered upon inspection, but was not. They do not, however, transfer the risk of loss where a seller makes fraudulent representations before a purchaser signs a binding agreement. [*Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994) (quotation marks and citations omitted).]

According to Rynbrandt, the "as is" clause in this case should transfer the risk of loss to Jordan, and preclude Jordan's fraud claim, because Jordan could have reasonably discovered the flooding upon inspection, but she instead chose to forgo an inspection. However, the basic rule that a party cannot claim fraud when he or she "had the means to determine for him- or herself the truth of the matter," only applies when the party was "either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *Alfieri v Bertorelli*, 295 Mich App 189, 194-195; 813 NW2d 772 (2012) (quotation marks and citation omitted). These are not the facts of this case. Rather, Rynbrandt expressly denied the existence of a flooding problem on her property, giving Jordan no reason to believe that there was a flooding problem and no reason to believe that additional inquiry was necessary. See *id*. And indeed, having made such a fraudulent misrepresentation before the parties signed a binding agreement, Rynbrandt cannot now claim that the "as is" clause bars Jordan's fraud claims. See *Lorenzo*, 206 Mich App at 687. Rynbrandt's "as is" argument lacks merit.

Finally, in disputing the trial court's fraud findings, Rynbrandt makes a timing argument, asserting that Jordan could not have relied on Rynbrandt's misrepresentations in the seller's

disclosure statement because Jordan signed the purchase agreement before she received the seller's disclosure statement. Relevant to Jordan's argument, the purchase agreement signed by Jordan and Rynbrandt indicated that Jordan received the seller's disclosure statement. Notwithstanding this statement in the contract, Jordan testified that she did not receive the seller's disclosure statement until after signing the agreement. According to Rynbrandt, this fact precludes a determination that Jordan relied on the seller's disclosure statement when purchasing the property.

This argument, ignoring the legal ramifications of the SDA, lacks merit. That is, under the SDA, if Jordan did not receive the seller's disclosure statement until after the purchase agreement was signed, she had the option to terminate the contract for a specified time following receipt of the seller's disclosure statement. See MCL 565.954(3). Given Jordan's legal option to cancel, the fact remains that Rynbrandt made false representations *before* their agreement was binding, and Rynbrandt cannot now claim that Jordan could not have relied on these false representations in the seller's disclosure statement when purchasing the property. See *Lorenzo*, 206 Mich App at 687. Indeed, contrary to Rynbrandt's claims, Jordan's testimony was that she did rely on the seller's disclosure statement when proceeding with the purchase of the property and when signing the addendums to waive inspection. In light of Jordan's testimony that she relied on Rynbrandt's representations in the seller's disclosure statement, the trial court did not clearly err by finding reliance to support a claim of fraudulent misrepresentation.

In sum, the trial court did not clearly err by concluding that Rynbrandt knowingly made material misrepresentations when she denied the existence of a flooding problem on her property, and the trial court did not err by concluding that Jordan relied on the misrepresentations.[2]

## II. DAMAGES

Rynbrandt challenges the award of damages on several bases, asserting (1) that repair or replacement costs were not an appropriate measure of damages, (2) that Jordan offered mere speculation and failed to prove her damages with reasonable certainty, (3) that, in awarding more than $20,250, the trial court's written order was mathematically incorrect and did not comport with the trial court's oral ruling on damages, and (4) that the trial court failed to justify the award of $41,500, which was more than the $31,500 sought by Jordan and which included an unsupported award of $10,000 for landscaping.

Following a bench trial, we review a trial court's award of damages for clear error. *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). Questions of law related to damages, such as whether a particular type of damages are available for a cause of action, are reviewed de novo. *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242; 828 NW2d 660 (2013). In this case, although we conclude that the trial court clearly erred by awarding $10,000 for landscaping, we find no merit to the remainder of Rynbrandt's arguments.

---

[2] On appeal, Rynbrandt also challenges the trial court's conclusion that Rynbrandt breached the parties' contract. However, the breach of contract claim did not result in additional or different damages, and given our conclusion that the trial court did not clearly err by finding fraud, we find it unnecessary to address the trial court's alternate findings regarding breach of contract.

-5-

## A. MEASURE OF DAMAGES

"In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Barclae v Zarb*, 300 Mich App 455, 479; 834 NW2d 100 (2013). Generally, in an action involving misrepresentations by a seller of property, when the defrauded party elects damages rather than rescission of the contract, the measure of damages is "the difference between the actual value of the premises as of the time of contract and the value thereof had same been as represented." *Gross v Morosky*, 366 Mich 114, 116; 113 NW2d 863 (1962). See also *Fagerberg v LeBlanc*, 164 Mich App 349, 356; 416 NW2d 438 (1987). The aim of difference-in-value damages is to give the deceived party the full benefit of the bargain. See *Chapman v Bible*, 171 Mich 663, 667; 137 NW 533 (1912).

In this case, the trial court awarded Jordan damages on the basis of the estimated costs to repair the flooding problem on her property. In the context of fraud or misrepresentation claims, repair or replacement costs—as an alternate to difference-in-value damages—are sometimes called "cost of conformation" damages, i.e., "the cost of changing the property so as to make it conform to the condition that was represented to exist." 37 Am Jur 2d, Fraud and Deceit, § 414. According to Rynbrandt's arguments on appeal, these repair costs are not a proper measure of damages in Michigan, and Jordan is entitled to no damages because she failed to present difference-in-value evidence. However, Rynbrandt cites no authority for the proposition that repair or replacement costs are categorically precluded as a measure of damages in Michigan. And contrary to Rynbrandt's argument, in *Clemens v Lesnek (After Remand)*, 219 Mich App 245, 246; 556 NW2d 183 (1996), this Court approved the use of repair or replacement costs as a measure of damages in the context of misrepresentations related to the sale of realty.

Specifically, *Clemens* involved a seller's failure to disclose numerous defects in a property, including a leaky roof, a faulty septic system, and problems with a water softener. The damages awarded by the trial court included costs to repair the roof and replace the water softener as well as estimated costs to replace the septic field. *Id*. at 247. On appeal, the seller argued that the trial court erred by awarding repair costs because doing so "improperly changed the difference-in-value determination of damages to one of replacement cost." *Id*. at 248. Rejecting this argument, we concluded that "the difference in value between buying a house that has a roof, a water softener, and a septic system, and buying a house that needed these items replaced would be the replacement value of these items."[3] *Id*. More generally, as noted, the goal of damages in an action for fraud involving the sale of property is to afford the deceived party the benefit of his or her bargain,

---

[3] Although not as closely analogous as *Clemons*, other cases involving misrepresentations related to the sale of property also support the conclusion that damages are *not* necessarily limited solely to difference-in-value damages. See, e.g., *McCurdy v US Hybrid Tree Co*, 374 Mich 388, 391; 132 NW2d 169 (1965) (affirming damages that included maintenance costs for trees on the property); *Price v Long Realty, Inc*, 199 Mich App 461, 472; 502 NW2d 337 (1993) (affirming award of consequential damages, including costs for a "longer driveway and natural-gas installation").

*Chapman*, 171 Mich at 667, and the use of repair or replacement costs as a measure of damages is consistent with this goal, see 2 Restatement Torts, 2d, § 549, comment *l*. See also *Kokkonen v Wausau Homes, Inc*, 94 Mich App 603, 615; 289 NW2d 382 (1980). In sum, in keeping with *Clemens*, and contrary to Rynbrandt's arguments on appeal, replacement or repair costs can be used as a means of valuing the damages caused by the seller's failure to convey the property as represented. Accordingly, Rynbrandt has not shown that the trial court erred by using repair or replacements costs as a measure of Jordan's damages.

## B. REASONABLE CERTAINTY

Recognizing that repair costs may be used as a measure of damages, there is also no merit to Rynbrandt's argument that Jordan failed to prove damages with reasonable certainty. With regard to the necessity of proving damages with reasonable certainty, this Court has observed:

> The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action. A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision. Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists. Moreover, the law will not demand that a plaintiff show a higher degree of certainty than the nature of the case permits. Thus, when the nature of a case permits only an estimation of damages or a part of the damages with certainty, it is proper to place before the jury all the facts and circumstances which have a tendency to show their probable amount. Furthermore, the certainty requirement is relaxed where damages have been established but the amount of damages remains an open question. Questions regarding what damages may be reasonably anticipated are issues better left to the trier of fact. [*Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96-97; 706 NW2d 843 (2005) (quotation marks and citation omitted).]

According to Rynbrandt, the damages sought by Jordan to repair the flooding issue are mere speculation because it is uncertain whether she will actually be able to fix the flooding problem. Contrary to this argument, the testimony from the contractors (i.e., From the Ground Up Management and Terra Pointe Consultants) established, with reasonable certainty, that the flooding issue can be addressed and they provided estimates—$22,500 and $9,000 respectively—for the costs to complete the work, which included estimates for drainage and landscaping work by From the Ground Up as well as engineering and surveying work by Terra Pointe. In asserting that Jordan has not shown that she suffered compensable damages, Rynbrandt essentially faults Jordan for having yet to obtain permits or permissions to complete the project. However, the fact remains that the flooding is physically capable of remediation and the costs for that remediation have been shown—in the form of estimates from contractors—with reasonable certainty. Indeed, even if Rynbrandt is correct that Jordan may not be able to obtain permits or permissions, her argument ignores that, under *Clemons*, 219 Mich App at 247-248, the costs of repair or replacement is a permissible measure of the value of Jordan's damages. That is, Jordan is entitled to damages representing the difference between the cost for a house with a flooding problem and one without a flooding problem, and pursuant to *Clemons*, one measure of such damages is the

costs to repair the flooding problem. Cf. *id*. ("[T[he difference in value between buying a house that has a roof, a water softener, and a septic system, and buying a house that needed these items replaced would be the replacement value of these items."). Overall, given the testimony from representatives of From the Ground Up and Terra Pointe, the trial court did not clearly err by determining that Jordan proved damages with reasonable certainty by offering estimates of the costs to repair the flooding problem on the property.

## C. AMOUNT OF DAMAGES

Although the trial court did not err by using repair costs as a measure of damages or in concluding that estimates by From the Ground Up and Terra Pointe established Jordan's damages with reasonable certainty, the specific amount awarded by the trial court was clearly erroneous insofar as the estimates by From the Ground Up and Terra Pointe totaled $31,500 and there is no basis in the record for the additional $10,000 awarded by the trial court for landscaping.

More specifically, Jordan's claims involved three purported defects related to Rynbrandt's disclosures: (1) flooding, (2) an underground fuel tank, and (3) termite damage. Following a bench trial, the trial court rejected Jordan's claims relating to (1) the underground fuel tank and (2) termite damage, concluding that Jordan was only entitled to damages for flooding. Accordingly, although there were estimates presented at trial regarding the costs to address the fuel tank and the termite issues, these costs were *not* awarded as damages by the trial court. Instead, the trial court expressly limited damages to matters related to remediation of the flooding. With regard to the evidence regarding the costs to address the flooding problem, as noted, the evidence admitted at trial showed that From the Ground Up estimated costs to address the flooding at $22,500. There were additional $9,000 in costs estimated in engineering and survey fees by Terra Pointe Consultants. For this reason, the judgment proposed by Jordan sought $31,500 in damages to address the flooding.

However, the trial court's written order awarded Jordan "$31,500.00, plus an additional $10,000.00 to repair the landscaping due to the resulting damage incurred from addressing the flooding issue." According to the trial court's order, "[t]he additional $10,000 represents approximately ½ of the amount presented by the Plaintiff presented [sic] at trial, which the Court deemed to be an inflated amount by the company presenting the estimate."

Although the award of $31,500 is supported by the estimates by From the Ground Up and Terra Pointe, the additional $10,000 awarded for landscaping has absolutely no basis in the record. Jordan presented no evidence of an estimate, in the "inflated amount" of $20,000, to repair the landscaping as a result of the flooding, and there is thus no basis to award the additional $10,000 (i.e., half) of this inflated $20,000. Indeed, the only evidence on the costs for landscaping to repair issues related to the flooding are amounts already *included* in the $22,500 estimate by From the Ground Up. The estimate by From the Ground Up specifies that, after the installation of drainage to fix the flooding is completed, low areas will be filled. The From the Ground Up estimate also expressly states that grading and seeding are "included in [the] price." The trial court awarded Jordan the *full* amount estimated by From the Ground Up and the *full* amount for the survey and engineering work from Terra Pointe Consultants. On this record, Jordan was fully compensated for the flooding, consistent with her own estimates and her own request for judgment, by an award of $31,500 which included (1) the full estimate by From the Ground Up in the amount of $22,500 and (2) an additional $9,000 for engineering and survey work. The additional $10,000 award for

landscaping lacks any evidentiary basis, and the trial court clearly erred by awarding this additional $10,000 to Jordan.[4]

Although we conclude that the trial court clearly erred by awarding $41,500 in damages, we find no merit to Rynbrandt's argument that the amount awarded should not have exceeded $20,250. Mathematically, Rynbrandt's damage calculation includes (1) $9,000 on the basis of Terra Pointe's estimate and (2) $11,250 (i.e., half) of From the Ground Up's estimate. According to Rynbrandt, the trial court orally ruled that Jordan would only receive "half" of From the Ground Up's estimated costs and, therefore, the trial court erred by awarding more than $20,250.

In rejecting this argument, we note, as an initial matter, that Rynbrandt's argument seems to be premised on the assertion that the trial court was somehow bound by its oral statements. However, it is well-established that "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Accordingly, even if the trial court's written orders did not comport with its earlier oral pronouncements, it is the trial court's written orders that control. See *id*. In any event, when the trial court's remarks are taken as a whole, it is clear, contrary to Rynbrandt's arguments, that the trial court did not intend to limit Jordan to recovery of half of From the Ground Up's estimate. In actuality, as noted, the trial court's references to awarding "half" of a landscaping estimate were made specifically with regard to a landscaping estimate from Harder & Warner (related to the underground fuel tank), not the estimate by From the Ground Up (related to flooding remediation). Following clarification regarding what the estimates entailed, the trial court made clear that the damage award would include "[w]hatever it takes to fix the flooding." Later, at the hearing on October 8, 2018, the trial court more specifically reviewed the From the Ground Up estimate and

---

[4] We note that the trial court expressed some "confusion" about the various estimates submitted by Jordan, and it appears to be this confusion that led to the baseless award of an additional $10,000 for landscaping. Specifically, during its oral ruling, the trial court initially said that it was going to award "half" the amount estimated by Harder & Warner for landscaping, and in awarding half, the trial court said that the $20,000 estimate for landscaping was "outrageous." However, Jordan clarified that the estimate by Harder & Warner was only in the amount of $2,200 (though in actuality it was more than $2,700) and that this landscaping estimate related to the underground tank, *not* the flooding. In comparison, Jordan explained that the From the Ground Up estimate was for $22,500, but that this estimate was not merely landscaping, it included the costs for drainage work to remediate the flooding as well as incidental landscaping related to the flooding remediation. As noted, Jordan received the full $22,500 related to the From the Ground Up estimate. Contrary to the statement in the trial court's order regarding damages, there was no other "inflated" $20,000 estimate for landscaping of any kind, and there was no other estimate for landscaping related to the flooding. Instead, the additional $10,000 appears to be a product of the trial court's confusion about the Harder & Warner estimate (which was not for $20,000 and which was for the underground tank, *not* the flooding). Again, the trial court found no merit to Jordan's claims involving the underground tank, and no damages were awarded in connection with the underground tank. Consequently, to the extent the trial court's reference to an "inflated" estimate was intended as a reference to the Harder & Warner estimate, the estimate was not for $20,000 and, in any event, none of this estimate could be awarded because it did not relate to the flooding.

characterized it as "very reasonable" for the work involved. On the whole, despite some confusion about the estimates, the trial court clearly intended to, and did in fact, award Jordan $31,500 to address the flooding on the basis of the From the Ground Up estimate ($22,500) and the Terra Pointe ($9,000) estimate. Given the evidence presented at trial, this award of $31,500 to address the flooding was not clear error.

In sum, to the extent the trial court awarded damages in the amount of $31,500 to redress the flooding problem on the basis of the From the Ground Up and Terra Pointe estimates, its findings were not clearly erroneous. It is only the additional $10,000 for landscaping that has no basis in the record. The award of an additional $10,000 for landscaping is vacated, and we remand for entry of judgment in Jordan's favor in the total amount of $31,500.

### III. ATTORNEY FEES UNDER MCR 2.625

Next, Rynbrandt argues that the trial court erred by awarding Jordan attorney fees under MCR 2.625 because there was no finding of frivolousness, and absent a finding of frivolousness, the court rule allows for an award of costs, but not attorney fees. We agree. We review an award of attorney fees for an abuse of discretion. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 422; 668 NW2d 199 (2003). We review de novo questions of law, including issues involving interpretation of a statute or court rules. *In re Attorney Fees & Costs*, 233 Mich App 694, 706; 593 NW2d 589 (1999). By awarding attorney fees not authorized by MCR 2.625, the trial court committed an error of law and, in doing so, necessarily abused its discretion. See *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

Specifically, in awarding attorney fees to Jordan, as stated in written orders dated May 3, 2019 and July 30, 2019, the trial court expressly relied on MCR 2.625 as the basis for the award of attorney fees. In relevant part, this court rule states:

> (A) Right to Costs.
>
> (1) In General. *Costs* will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.
>
> (2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.
>
> (B) Rules for Determining Prevailing Party.
>
> * * *
>
> (2) Actions With Several Issues or Counts. In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed *costs* for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party. [MCR 2.625 (emphasis added).]

Under MCR 2.625(A)(1) and MCR 2.625(B)(2), it is clear that a prevailing party is entitled to *costs*. But neither MCR 2.625(A)(1) nor MCR 2.625(B)(2) provides that a prevailing party is entitled to *attorney fees*. Michigan follows the American rule to attorney fees, which provides that "attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005). See also MCL 600.2405(6). Notably, "the term 'costs' ordinarily does not encompass attorney fees unless the statute or court rule specifically defines 'costs' as including attorney fees." *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004). By providing for "costs," without defining costs to include attorney fees, MCR 2.625(A)(1) and MCR 2.625(B)(2) do *not* authorize an award of attorney fees.[5] See *Dessart*, 470 Mich at 42; see also *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 518 n 3; 556 NW2d 528 (1996) (noting that MCR 2.625 "does not allow for an award of attorney fees"), aff'd 458 Mich 582 (1998). Consequently, the trial court erred by relying on MCR 2.625 to award attorney fees to Jordan.[6] The award of attorney fees is vacated and the case remanded for a determination of Jordan's taxable costs only. See *Klinke*, 219 Mich App at 518.

## IV. RYNBRANDT'S REQUEST FOR ATTORNEY FEES UNDER MCR 2.405

Finally, Rynbrandt asserts that she was entitled to attorney fees under MCR 2.405(D) because, in connection with Jordan's original complaint, she and Jordan made counteroffers of judgment averaging $8,237.50. Jordan prevailed only on her claims involving the flooding, which

---

[5] Under MCR 2.625(A)(2), if a court finds an action or defense to be frivolous, costs shall be awarded as provided in MCL 600.2591. And under MCL 600.2591(2), costs include attorney fees. However, an award of attorney fees under MCR 2.625(A)(2) and MCL 600.2591 requires a finding of frivolousness. No such finding was made in this case.

[6] In contrast to this conclusion, Jordan asserts on appeal that attorney fees were properly awarded as damages because Rynbrandt committed fraud. Factually, this assertion ignores the basis for the trial court's ruling. In its written order, the trial court expressly and unequivocally awarded attorney fees under MCR 2.625. Indeed, the trial court's order also expressly stated that Jordan was *not* entitled to exemplary damages, and yet, the cases on which Jordan relies on appeal considered attorney fees in the context of exemplary damages. See *Oppenhuizen v Wennersten*, 2 Mich App 288, 296; 139 NW2d 765 (1966); see also *Larson v Van Horn*, 110 Mich App 369, 383; 313 NW2d 288 (1981). Jordan does not challenge the trial court's denial of exemplary damages, and she does not attempt to justify the trial court's reliance on MCR 2.625. Her arguments, which fail to address the basis for the trial court's rulings, lack merit. Moreover, we note that Jordan's broad claim that attorney fees are available as damages in a fraud action is not supported by the caselaw. Instead, the rule on which Jordan attempts to rely allows for recovery of attorney fees incurred in an earlier action or in connection with claims involving *a third party* rather than fees incurred in the present action against the defendant. See 2 Restatement Torts, 2d, § 914; *Larson*, 110 Mich App at 383; *G & D Co v Durand Milling Co, Inc*, 67 Mich App 253, 258; 240 NW2d 765 (1976); *Birou v Thompson-Brown Co*, 67 Mich App 502, 516; 241 NW2d 265 (1976); *Petition of State Farm Mut Auto Ins Co*, 50 Mich App 71, 78; 212 NW2d 821 (1973); *Oppenhuizen*, 2 Mich App at 299.

Jordan did not raise until she filed her amended complaint. Because Jordan was unsuccessful on her original complaint, Rynbrandt contends the verdict related to the original complaint was $0 and that the verdict was, therefore, more favorable to Rynbrandt than the average offer. The trial court failed to decide Rynbrandt's motion under MCR 2.405(D), and Rynbrandt asserts that, at a minimum, she is entitled to a hearing. We disagree. Because Rynbrandt's request under MCR 2.405 was untimely, we need not reach the merits of her claim, and we see no reason for a remand for a hearing before the trial court.

A request for attorney fees under MCR 2.405 "must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion" for a new trial, to set aside judgment, or for rehearing or reconsideration. MCR 2.405(D)(6). This express time requirement is mandatory, and a party who fails to file within the required time is not entitled to costs and attorney fees under MCR 2.405. *Kopf v Bolser*, 286 Mich App 425, 430-434; 780 NW2d 315 (2009). In this case, judgment entered on July 30, 2019. Accordingly, a request under MCR 2.405(D)(6) had to be filed by August 27, 2019. Rynbrandt's request, filed on August 29, 2019, was, therefore, untimely, and she was not entitled to attorney fees under MCR 2.405.[7] See *Kopf*, 286 Mich App at 430-434.

Affirmed in part, vacated in part, and remanded for entry of a reduced judgment in Jordan's favor (in the amount of $31,500) and an award of costs only under MCR 2.625. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Mark T. Boonstra

---

[7] We note that Rynbrandt indicates on appeal that she filed her motion on August 27, 2019. However, her motion in the lower court record was date stamped by the Barry County clerk's office as having been filed on August 29, 2019. Likewise, the register of actions for the case lists the date of the motion as August 29, 2019. It is the clerk's role to record the date of filing and to maintain a register of actions. See MCR 1.109(C); MCR 8.119(C) and (D)(1). And the date stamp on a document may be used to determine whether it was timely filed. See, e.g., *People v Earls*, 485 Mich 859 (2009). Given the date stamp and the entry in the register of actions, we consider the motion to have been filed on August 29, 2019, making it untimely under MCR 2.405(D)(6).